IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| -vs- | ) |
| | ) Criminal No. 07-20 |
| MARKUS ANTONIO PEREZ-VASQUEZ | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## FINDINGS OF FACT

1. On July 5, 2006, Carroll Township Police Officer Massafra observed a vehicle at approximately 2:15 A.M. coming in the opposite direction. The vehicle did not dim its high beams, which was a violation of the Motor Vehicle Code.

2. Massafra turned around, activated the lights on the police car he was driving and stopped the vehicle.

3. Massafra approached the vehicle, asked for identification and told the driver the reason for the stop. The vehicle was driven by Defendant.

4. Massafra returned to the police car and determined from the dispatcher that Defendant's license was under suspension and that the vehicle was owned by someone other than Defendant.

5. Massafra wrote a citation and upon giving it to Defendant, smelled a strong

odor of marijuana coming from inside the vehicle.

6. Massafra asked Defendant if there was marijuana in the vehicle and Defendant answered, "No" and immediately offered Massafra the opportunity to search the vehicle.

7. Massafra asked Defendant to exit the vehicle and stand in front of the police vehicle where Massafra incorrectly told Defendant there was a camera.

8. Upon searching the vehicle, Massafra saw what appeared to be marijuana and crack in a bag under the driver's seat, char boy (a crack pipe filter) in the back, along with baggies.

9. Massafra arrested Defendant and took Defendant to the police station for processing.

10. Massafra asked Defendant no questions after Defendant was arrested and Defendant made no statements after his arrest.

11. On July 13, 2006, Pennsylvania State Troopers Spisak and Gregg were on patrol looking for an individual with an outstanding warrant in the Bentleyville area of Washington County. Spisak and Gregg were in full uniform in a marked vehicle. This was a high-crime area.

12. Spisak and Gregg observed two (2) men, one of whom was Defendant, and approached them. Defendant began to walk away.

13. Spisak and Gregg began to talk to the other individual. Defendant stopped walking and Gregg began to talk to Defendant. When Gregg asked Defendant his name, Defendant responded Mark or Mike Johnson. Defendant also

stated that he was visiting his cousin "Twiz". Gregg knew "Twiz" to be an individual involved in drug trafficking. Defendant told Gregg he could not remember his cousin's real name. Gregg also knew the Defendant was not Mark or Mike Johnson due to an incident with Defendant one week earlier which involved a shooting.

14. Gregg, because of the false information Defendant gave him and the recent shootings in the area, asked Defendant if he had any weapons. Defendant said, "No." Gregg asked Defendant if Gregg could pat him down and Defendant reached into his pockets.

15. Gregg told Defendant not to empty his pockets and only to lift his shirt.

16. Defendant thrust his hand into his front right pocket, turned around and walked away.

17. Gregg ordered Defendant to stop and remove his hand from his front pocket. Defendant refused and a brief struggle ensued in which Gregg and Spisak subdued Defendant.

18. Defendant stated that he had a gun in his waistband and that he had not been reaching for the gun but was trying to get the "dope" in his pocket.

19. Defendant was searched and on his person were found several baggies of crack and a digital scale as well as a gun in Defendant's waistband.

20. Several times Defendant reiterated his statement that he was reaching for drugs, not a gun.

21. In the police car, on the way to the police station, Gregg and Spisak orally advised Defendant of his <u>Miranda</u> rights. Defendant did not appear to be under the

influence of drugs or alcohol.

22. Defendant stated that he understood his rights and repeated several times that he was reaching for drugs and not the gun. Defendant also stated that he obtained the gun from a friend, in response to Gregg's question.

23. Later on the way to the magistrate's office, in response to Gregg's question, Defendant stated again that he got the gun from a friend, had it for protection and knew it was probably stolen.

24. Also in response to Gregg's question, Defendant admitted he sold crack and charged from $40.00 to $80.00 a bag, depending on the amount involved.

## CONCLUSIONS OF LAW

1. Massafra's stop of Defendant's car on July 5, 2006 was in response to Defendant's violation of the Pennsylvania Vehicle Code and, therefore, legal.

2. When Massafra smelled marijuana emanating from Defendant's vehicle he possessed an articulable and particularized suspicion that marijuana was in the vehicle or on Defendant's person. Therefore, Massafra was permitted to detain Defendant for some time to investigate the presence of marijuana.

3. Defendant invited Massafra to search the vehicle without request from Massafra.

4. In any event, the odor of marijuana gave Massafra probable cause to search the vehicle and the items found therein are admissible.

5. Gregg and Spisak conducted a valid stop based on reasonable suspicion of Defendant on July 13, 2006 under the totality of the following circumstances:

(a) an encounter in a high-crime area where recent shootings had occurred;

(b) Defendant's backing away as the police approached.

(c) Defendant's giving a false name to Gregg who had encountered Defendant a week earlier in Gregg's investigation of a shooting incident;

(d) Defendant's response that he was visiting a cousin who he could only identify as "Twiz," a known drug trafficker.

(e) Defendant's actions of reaching into his pocket, spinning around and refusing to stop this conduct after Gregg's command.

6. Gregg had reason to believe Defendant was involved in criminal activity based on the totality of the circumstances set forth above.

7. Defendant's incriminatory statements during the stop on July 13, 2006, were initially voluntary and not in response to any questions asked by Gregg or Spisak. Therefore, they are admissible.

8. Defendant's additional, similar statements were made after Defendant had been advised of his <u>Miranda</u> rights and after Defendant voluntarily waived those rights.

<u>\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*</u>

## ORDER OF COURT

AND NOW, this **1st** day of June, 2007, it is Ordered that Defendant's Motion to

Suppress (Docket No. 26) is denied in its entirety.

Voir dire and jury instructions are due June 12, 2007. Trial is scheduled for June 25, 2007 at 9:30 A.M.

BY THE COURT:

/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge